UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADVENT SOFTWARE INC., <br><br>                                    Plaintiff, <br><br>               - against - <br><br> G2 FT, LLC, <br><br>                                    Defendant. | No. 18-CV-3750 <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff Advent Software Inc. ("Advent"), by its undersigned attorneys, upon personal knowledge with respect to itself and its actions and otherwise on information and belief, alleges as follows:

## NATURE OF THE ACTION

1. Advent brings this action for injunctive relief against Defendant G2 FT, LLC ("G2"), to prevent G2 from denying Advent (and Advent's customers) the use of the critical and time-sensitive software (the "Software") that G2 has licensed to Advent and that Advent has paid for, as well as for monetary relief for G2's failure to pay undisputed amounts owed to Advent and other damages.

2. For years, Advent has licensed the Software from G2 pursuant to the parties' Development, License and Services Agreement, as amended (the "Agreement"). Advent relicenses that Software to its own banking customers, and then pays G2 a contractually fixed percentage of those licensing fees. The Software is of vital importance to Advent's customers because they use it to perform certain calculations and provide time-sensitive reports to their clients that are required by federal law. G2

expressly agreed in the Agreement that "time is of the essence" with respect to its obligation to deliver the Software to Advent's customers.

3. G2 has now repudiated its contractual obligations to Advent. G2 has failed to pay $250,000 it owed to Advent on January 1, 2018, even though the amount is undisputed. G2 has further refused to provide a new activation code necessary for Advent's customer BNP Prime Services ("BNP Prime") to continue to use the Software that Advent has licensed to BNP Prime, even though Advent has already paid G2 its share of Advent's licensing fees from BNP Prime upfront and in full.

4. G2 has no defense or justification for its breaches. Although Advent has complied with its contractual obligations—including paying G2 for the recently renewed BNP Prime license—G2 has told Advent that complying with the Agreement "is off the table" and has admitted that it is withholding the $250,000 payment and the activation code as leverage for Advent to negotiate a new deal and pay G2 more money.

5. G2's anticipatory repudiation and breach of the Agreement is manifest. The Agreement obligated G2 (1) to pay $250,000 on January 1, 2018, which it now refuses to pay, and (2) to provide the Software to Advent's customers (including BNP Prime) in exchange for 30% of Advent's annual licensing fees from those customers (or a higher fixed percentage for certain customers). Advent paid G2 30% of the BNP Prime renewal license fee on April 18, 2018 ($31,500), yet G2 is refusing to provide the activation code for BNP Prime to use the Software unless Advent relents to G2's demand for higher fees than the Agreement provides for.

6. G2 is breaching the Agreement deliberately to try to gain commercial advantage and, additionally, seeks to irreparably harm Advent's customer goodwill by

rendering the Software inoperable to Advent's customers.  G2 is blocking BNP Prime from using the Software it licensed from Advent—and for which G2 has been fully paid—and the Software will cease to function if BNP Prime does not receive a new activation code by May 4, 2018.

7. Accordingly, the relief that Advent seeks by this action—recovery of the undisputed amounts owed by G2 and an order directing G2 to cease withholding the activation codes for the Software that G2 has already licensed—is just, reasonable, and necessary.

## PARTIES

8. Plaintiff Advent Software Inc. is a Delaware corporation with a principal place of business in San Francisco, California.  Advent is a wholly owned subsidiary of SS&C Technologies Holdings, Inc.

9. On information and belief, Defendant G2 FT, LLC is a New York limited liability company with its principal place of business in New York, New York.  G2 develops software that Advent relicenses to Advent's customers, along with other products.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of costs and interest.

11. This Court has personal jurisdiction over G2 pursuant to N.Y. CPLR § 301 because G2 is a New York entity and has a principal place of business in New York.

G2 has also consented to jurisdiction in New York pursuant to Section 17.4 of the Agreement.

12.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) because G2's principal place of business is located in this District.  G2 has also consented to venue in this District pursuant to Section 17.4 of the Agreement.

## FACTS

13.     Advent provides software solutions to asset managers, investment funds, and other financial services firms.  Advent's software offerings assist in portfolio management, accounting, compliance, reporting, and other critical functions of our clients' businesses.  Advent is owned by SS&C Technologies Holdings, Inc., a publicly traded company.

14.     Some elements of Advent's software solutions are in-house proprietary products developed by Advent, while other elements are licensed or purchased from third-party software providers and relicensed to Advent's customers.  G2 is one such outside provider of a component of Advent's software products.

**I.      G2's Software and the 2013 Development, License and Services Agreement**

15.     In December 2013, Advent and G2 entered into a Development, License and Services Agreement (the "Agreement" or "Agt.").

16.     Under the Agreement, G2 granted to Advent a nonexclusive, worldwide license to distribute, sublicense, and sell software known as TaxGopher Full Tax Product, TaxGopher CBR Product, and all updates thereto (the "Software") to Advent's customers.  (Agt. §§ 1.9, 4.1.)

17. The Software is used to track and calculate cost-basis information for various types of securities—a complex, critical, and time-sensitive function that financial institutions are legally required to calculate under Internal Revenue Service regulations. *See generally* 26 C.F.R. §§ 1.6045-1. Prime brokers, such as BNP Prime and other Advent customers, are mandated by law to provide these cost-basis reports to their clients every time their clients transfer assets to other firms, which happens regularly. Advent's customers also are required to perform these cost-basis calculations when they prepare I.R.S. Forms 1099-B for their clients.

18. The Agreement gave Advent the right to repackage the Software as part of Advent's own software solutions. (Agt. § 4.5.)

19. In exchange, G2 is entitled through December 31, 2018 to be paid 30% of the fees Advent charges its customers for its relicensing of the Software (or a higher fixed percentage for certain customers). (Agt. § 4.1 and Exhibit C thereto § II.)

20. After entering into the Agreement, Advent included the Software in its suite of software solutions and began relicensing the Software to its customers. Advent licenses the relevant software to its customers on an annual renewal basis. Each term, Advent's customers renew their rights to use Advent's software solutions (including the Software functionality) and make payment to Advent for those rights. Advent, in turn, pays 30% of the fees from the Software to G2 each year (or a higher fixed percentage for certain customers).

21. When Advent sells a license for the Software to a customer, G2 is obligated to deliver the Software to the customer "[o]n the date Advent specifies." (Agt.

§ 5.2.)  Advent agreed that "time is of the essence" for the fulfillment of the Software after the customer purchases a license from Advent.  (*Id.*)

22.     An activation code also is necessary to enable customers to use the Software.  The activation code is a series of alphanumeric characters that functions as a one-time password to use the Software.  G2 provides that activation code so that Advent's customer can use the Software.

23.     G2 has provided activation codes that have an annual expiration date.  Accordingly, around the time an Advent customer renews its license with Advent for the Software, G2 generates a new activation code that provides functionality for an additional year.

24.     The parties performed under the Agreement in this manner for several years.

25.     As of 2015, Advent had entered into agreements to relicense the Software to six of its customers:  BNP Prime Services ("BNP Prime"), Barclays Prime Services, Goldman Private Wealth Management, Jefferies Prime Services, MUFG Fund Services (Bermuda) Group Ltd., and BNP Paribas Fund Administration ("BNP Fund Admin.").

II.     **The 2015 Amendment to the Agreement**

26.     In 2015, G2 sold many of its assets—including the intellectual property assets behind the Software—to nonparty KPMG.

27.     On information and belief, KPMG required G2 to renegotiate the Agreement with Advent in order to withdraw Advent's right to relicense the Software to new and additional customers.

28. In October 2015, therefore, Advent and G2 negotiated and entered into an amendment to the Agreement (the "Amendment" or "Amdt.").

29. Pursuant to the Amendment, Advent agreed to forego its right to relicense the Software to any new customers. G2 agreed to continue licensing the Software to Advent, and delivering the Software to Advent's then-existing customers, "to the extent necessary to fulfill [Advent's] existing obligations under the Existing Customer Licenses." (Amdt. § 2.4 (new § 4.1 of the Agreement).) Schedule 1 of the Amendment lists the "Existing Customers and Existing Customer Licenses," including BNP Prime and the other customers identified in paragraph 25 above. (Amdt. Schedule 1.)

30. In exchange for Advent giving up its right to relicense the Software to any new customers, G2 agreed to pay Advent $500,000 in two equal installments of $250,000. The first installment payment was due immediately, and the second installment payment was due on January 1, 2018. (Amdt. § 2.3 (new § 2.1 of the Agreement); *id.* § 2.4 (new § 4.1 of the Agreement).)

31. The Amendment also imposed an end date (the "Term") of December 31, 2019 on the Agreement, after which time Advent's licenses, its right to relicense the Software to its Existing Customers, and all of Advent's Existing Customer Licenses to use the Software would expire. After the expiration of the Term, Advent would no longer be authorized to offer the Software as part of its suite of software solutions to any customers. (Amdt. § 2.7 (new § 15.1 of the Agreement); *id.* § 2.11 (new § 3.3 of the Agreement).)

32. In addition, the Amendment altered the percentage of fees G2 would receive for Advent's sale of licenses to its Existing Customers, including BNP Prime.

7

With respect to existing customers defined as "Migrated Customers," including BNP Prime, G2 agreed to be paid 30% of Advent's relicensing fees through December 31, 2018. Beginning January 1, 2019 through December 31, 2019 (when the entire Agreement would terminate), G2 would be entitled to 60% of Advent's relicensing fees for such customers. (Amdt. § 2.3 (new § 2.3 of the Agreement and Exhibit C thereto).)

33. Since the Amendment, Advent's Existing Customers have continued using the Software and have continued renewing their licenses for the Software on an annual basis. Advent continued to pay to G2 (and G2 continued to accept) 30% of the fees received from the Existing Customers. And until early 2018, G2 continued to provide the annual activation codes for Advent's Existing Customers to use the Software.

34. On or about November 18, 2015, G2 paid Advent the first $250,000 installment of the $500,000 payment required by the Amendment.

35. On information and belief, after its sale of assets to KPMG in 2015, G2's principal remaining business is to continue supporting, and collecting payments on, its preexisting licensing agreements (which it did not transfer to KPMG), including the amended Agreement with Advent.

### III. BNP Prime's License to Use the Software

36. As described above, BNP Prime is one of the Existing Customers to which Advent has issued a license for the Software. The most recent licensing agreement between Advent and BNP Prime was signed in December 2015. By that agreement, Advent granted to BNP Prime a one-year license that automatically renews every February until December 31, 2019, unless BNP Prime chooses not to renew.

37. BNP Prime's license has automatically renewed every February since then. Under the terms of BNP Prime's agreement with Advent, BNP Prime pays an annual licensing fee to Advent upon every renewal. Each year, Advent has then paid to G2 its 30% share of the licensing fees Advent received from BNP Prime for that year's renewal.

38. In February 2018, the Software license granted to BNP Prime by Advent automatically renewed, and BNP Prime therefore currently holds a valid, duly issued license to use the Software until February 2019.

39. This arrangement—whereby BNP Prime's license automatically renews every February—does not apply to BNP Paribas Fund Administration ("BNP Fund Admin."), which is also an Advent customer to which Advent has granted a separate license to use the Software. In 2015, Advent granted to BNP Fund Admin. a non-renewing license that is valid until December 31, 2019. BNP Fund Admin. pays Advent in annual installments in June. Accordingly, BNP Fund Admin. also currently holds a valid, duly issued Software license.

## IV. G2's Breach of the Agreement and Threat to Disrupt Advent's Supply of Software

40. In February 2018, Advent notified G2 that BNP Prime was renewing its Software license with Advent for another year. Advent's fees for that 2018 renewal were forecast to be $100,000, just as they had been in 2017. When Advent renewed BNP Prime's license for 2017, Advent paid $30,000 to G2—which G2 accepted without protest or complaint.

41. Accordingly, in February 2018, Advent requested from G2 an invoice for its share of Advent's expected licensing fees from the BNP Prime renewal: $30,000 (30%).

42. G2 refused to issue the invoice for its share of Advent's fees on the BNP Prime license renewal. On March 12, 2018, in violation of the Agreement, G2 stated in an email to Advent: "We will not be issuing a license at this price" for BNP Prime. Although G2 is not the one who issues licenses to Advent's customers such as BNP Prime—Advent issues those licenses directly under new Section 4.1(a) of the amended Agreement (Amdt. § 2.4)—G2 made clear that it would try to prevent BNP Prime from using the Software.

43. In addition, G2 has failed to pay the $250,000 it owed to Advent in January 2018 as the second installment of the $500,000 payment required by the Amendment. (Amdt. § 2.3 (new § 2.1 of the Agreement).)

44. G2 has informed Advent that it will not pay the $250,000, will not provide the activation code for BNP Prime to continue using the Software under its renewal license, and will not perform any of its obligations under the parties' Agreement—including providing the Software activation codes for Advent's Existing Customers.

45. To give G2 an opportunity to cure its breaches and comply with the Agreement, Advent has engaged in discussions (by phone and by email) with G2 personnel numerous times since February 2018, including several communications with G2's principals, George Michaels and Ruban Selvakumar.

46. In none of those conversations did G2 identify any provision of the Agreement that entitled it to refuse to provide activation codes or to refuse to make the second $250,000 installment payment required by the Amendment. (Amdt. § 2.1.)

47. Instead, G2 stated that the Agreement, as written, as amended, and as honored by Advent, was not lucrative enough for G2. G2 insisted that if Advent did not agree to accede to its demand for entirely new terms (including a refund of the $250,000 that G2 paid in 2015, a release from the $250,000 that G2 failed to pay in January 2018, and a new licensing fee formula), G2 would deny Advent and BNP Prime the activation code to use the Software—even if Advent paid G2 the full fee actually required by the terms of the Agreement.

48. In addition to blocking BNP Prime's use of the Software, G2 declared that it would no longer comply with any of the terms of the Agreement. On April 20, 2018, one of the principals of G2, George Michaels, stated to Advent that complying with the Agreement as written is "off the table."

49. G2 also has admitted in writing that it has no contractual basis for its demands. G2 has claimed that it had an understanding that its fees from Advent would be maintained at a certain level, but G2 acknowledged that this purported arrangement was "not specifically spelled out in the contract." G2 could not, upon request, produce any written proof of its purported understanding.

50. To the contrary, both the original Agreement (Agt. § 17.7) and the Amendment (Amdt. § 6) contain full integration clauses.

51. Despite G2's repudiation of its obligations, Advent continued to abide by its obligations. On April 18, 2018, Advent paid to G2 its share of Advent's licensing fees

11

for the BNP Prime license renewal by wiring $31,500 to G2, representing 30% of the $105,000 renewal fee that BNP Prime ultimately paid to Advent.

52.     To date, G2 has not paid the second $250,000 installment, which was due on January 1, 2018, and has stated that G2 will prevent BNP Prime from using the Software it has licensed from Advent—G2's share of the fees for which have been paid in full—by refusing to provide the activation codes for the licensed Software.

**V.     The Harm G2 Will Cause to Advent's Customer Goodwill and Reputation**

53.     If Advent is unable to timely and reliably provide operable Software to BNP Prime (and its other customers) because of G2's efforts to prevent the use of that Software, the harm to Advent's goodwill, reputation, and standing in the marketplace will be immediate and irreparable.

54.     The Software at issue is critical for Advent's customers, because they depend on the Software to perform complex, time-sensitive calculations required by law for the benefit of their own clients.  That is why G2 agreed in the parties' Agreement that "time is of the essence" for fulfillment of the Software.  (Agt. § 5.2.)

55.     Advent has supplied the Software to BNP Prime and its other customers consistently, seamlessly, and without disruption for more than four years—and BNP Prime has contracted with Advent and paid Advent to be provided that Software for the coming year.

56.     If Advent fails to meet BNP Prime's expectations and requirements, Advent's goodwill and credibility will be damaged not only with BNP Prime, but also with its other customers who count on Advent to be a dependable and trustworthy provider of essential and time-critical software solutions and services.

57. BNP Prime's current activation code that permits it to use the Software expires on May 15, 2018.

58. Because of the limited windows of time during which BNP Prime computer systems can be taken offline to input the new activation code, BNP Prime needs to receive the activation code no later than May 4, 2018 to avoid a substantial and costly interruption to its business operations and legal compliance.

59. On May 15, 2018, if no replacement activation code has been entered, the Software will cease to be operable, rendering BNP Prime unable to run the calculations and reports required by law.

60. Obtaining replacement software, integrating it into BNP Prime's computing systems, and testing that software to ensure the level of reliability demanded by large financial institutions like BNP Prime (and required of such institutions by law) is not technologically possible by May 15, 2018.

61. Two of Advent's other Existing Customers will require new activation codes this summer (one in June and one in August), and other Existing Customers will need new activation codes later in 2018 and throughout 2019.

62. Given that G2 has expressly repudiated its contractual obligation to provide an activation code for BNP Prime, there is no reason to believe that G2 will provide activation codes for Advent's other Existing Customers.

63. It is precisely because the disruption of Advent's supply of operable Software to BNP Prime and its other Existing Customers will be so damaging to Advent's customer goodwill and integrity, that G2 has tried to leverage that threat to extract new contract terms and higher fees.

64. If G2 is not enjoined to cease from interfering with Advent's supply of the Software and its customers' use of the Software, the harm to Advent will be irreparable.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Failure to Make Payment)

65. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64 above as if fully set forth herein.

66. The Agreement, as amended, is a binding and enforceable contract between Advent and G2.

67. Advent has complied with its obligations under the Agreement, as amended.

68. G2 has breached and is continuing to breach its contractual obligation under Section 2.1(ii) of the Agreement to pay $250,000 to Advent by January 1, 2018.

69. Accordingly, Advent is entitled to damages in the amount of $250,000, plus interest.

### SECOND CAUSE OF ACTION
### BREACH OF CONTRACT
### (Failure to Deliver Operable Software)

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 above as if fully set forth herein.

71. The Agreement, as amended, is a binding and enforceable contract between Advent and G2.

72. Advent has complied with its obligations under the Agreement, as amended.

73.     G2 has breached and is continuing to breach its contractual obligations under Sections 4 and 5 of the Agreement, as amended, to deliver the Software, including the activation code for the Software, for use by Advent's Existing Customer BNP Prime, and has repudiated its obligation to deliver the Software to Advent's other Existing Customers.

74.     The Software is unique and not replaceable.  Unless G2 is enjoined from improperly withholding authorization to use the Software from Advent and its duly authorized licensees (including BNP Prime), Advent and its licensees (including BNP Prime and its other Existing Customers) will suffer substantial and irreparable harm, including potential noncompliance with various legal obligations.  Advent and its Existing Customers have no adequate remedy at law for G2's repudiation and ongoing breach of the Agreement, as amended, in this regard.

75.     Accordingly, Advent is entitled to specific performance of G2's contractual obligation to license the Software to Advent and to deliver the Software to Advent's licensees (*i.e.*, its Existing Customers), including an order directing that G2 issue any activation codes necessary to permit use of the Software by Advent's Existing Customers through December 31, 2019, as required by the Agreement.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(Rights and Obligations Under the Agreement)**

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 75 above as if fully set forth herein.

77.     The Agreement does not provide G2 the right to unilaterally terminate the Agreement.  As amended, the Agreement terminates only: (1) under Section 15.1, as

amended, "on the earlier of: (i) December 31, 2019, unless otherwise agreed by the parties in writing; or (ii) when the last Existing Customer License terminates"; (2) under Section 15.2, at the election of either party "if the other party commits any material breach of the Agreement, and fails to cure such breach within thirty (30) days following written notice of such failure"; or (3) under Section 17.2, at Advent's sole election in the event of certain specified change-of-control transactions involving G2.

78. The Agreement also does not provide G2 the right to deny or interfere with the renewal of licenses to Advent's Existing Customers or to refuse to deliver the Software (including the activation codes) to Advent's Existing Customers. Under Section 5.2 of the Agreement, G2 is obligated to deliver the Software (including the activation codes) "[o]n the date Advent specifies," and G2 agreed that "time is of the essence" for its fulfillment of the Software.

79. G2 has threatened to cease performing its obligations under the Agreement and unilaterally terminate the Agreement if Advent does not capitulate to G2's demands to renegotiate the terms of the Agreement.

80. G2 also has threatened to refuse to issue future renewals as required by the Agreement if Advent does not capitulate to G2's demands to renegotiate the terms of the Agreement.

81. By virtue of the foregoing, an actual controversy exists between Advent and G2 regarding the parties' contractual rights and obligations under the Agreement.

82. Accordingly, Advent is entitled to a judgment declaring that G2 has no legal right to cease performing its obligations under the Agreement or unilaterally terminate the Agreement, as amended, that the Agreement terminates only in the

circumstances specified in paragraph 77 above, and that G2 has no legal right to refuse to deliver the Software (including the activation codes) to Advent's Existing Customers under their existing and renewed licenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests judgment against Defendant as follows:

(a) Awarding compensatory damages in the amount of $250,000, plus pre- and post-judgment interest;

(b) Awarding preliminary and permanent injunctive relief directing G2 to deliver the Software, including any activation codes necessary to permit use of the Software by Advent's Existing Customers through December 31, 2019;

(c) Declaring that G2 has no legal right to cease performing its obligations under the Agreement or unilaterally terminate the Agreement, as amended;

(d) Awarding costs and attorneys' fees; and

(e) Such other relief as this Court deems just and proper.

Plaintiff demands a jury trial on all issues so triable.

Dated: New York, New York
April 27, 2018

                                        **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

                                        By: /s/ Jacob R. Fiddelman
                                              Brad S. Karp
                                              Robert A. Atkins
                                              Geoffrey R. Chepiga
                                              Jacob R. Fiddelman

                                        1285 Avenue of the Americas
                                        New York, New York 10019-6064
                                        (212) 373-3000
                                        bkarp@paulweiss.com
                                        ratkins@paulweiss.com
                                        gchepiga@paulweiss.com
                                        jfiddelman@paulweiss.com

                                        *Attorneys for Plaintiff Advent Software Inc.*